Approved: _____
Celia V. Cohen/Samuel L. Raymond
Assistant United States Attorneys

Before:  HONORABLE LISA M. SMITH
United States Magistrate Judge
Southern District of New York

17mag5010

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

          - v. -

LISA HENDERSON,

                    Defendant.

- - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of
21 U.S.C. § 846

COUNTY OF OFFENSE:
WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

   SEAN P. FOGARTY, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration, and charges as follows:

### COUNT ONE

   1.  From at least on or about May 13, 2017 through at least on or about July 5, 2017, in the Southern District of New York and elsewhere, LISA HENDERSON, the defendant, intentionally and knowingly did combine, conspire, confederate, and agree with others, including Christopher Coleman, a/k/a "Fox," to violate the narcotics laws of the United States.

   2.  It was a part and an object of the conspiracy that HENDERSON, the defendant, and Christopher Coleman, a/k/a "Fox," and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances involved in the offense were mixtures and substances containing heroin, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Detective in the Yonkers Police Department (the "YPD") and a member of a Drug Enforcement Administration Task Force ("DEATF"). I have been in law enforcement for nineteen years. Before joining DEATF, I was a member of the YPD, where I spent over five years assigned to the narcotics unit. I have been a member of a DEATF for two years. I have been involved in the investigation of the above-described offense. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents and recordings, my participation in surveillance, and my conversations with other individuals, including fellow law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents or recordings, or the actions, statements or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. On or about May 2, 2017 and June 8, 2017, the Honorable Cathy Seibel, United States District Judge for the Southern District of New York, issued Orders of Interception authorizing the interception and recording of wire and electronic communications over a call number ending 1208 (the "1208 Wires" and the "1208 Number," respectively).

6. For the following reasons, amongst others, I believe that Christopher Coleman, a/k/a "Fox," used the 1208 Number for the duration of the 1208 Wires. First, Coleman is currently on federal supervised release and he provided the United States Probation Office with the 1208 Number as his contact number. Second, pursuant to the 1208 Wires, law enforcement has intercepted communications in which the user of the cellphone assigned the 1208 Number has identified himself, or been addressed, as "Chris" or "Fox."

7. Based on my conversations with law enforcement agents and my review and analysis of communications intercepted over the 1208 Wires, I have learned in substance and in part, that

interceptions over the 1208 Wires included interceptions of communications between Christopher Coleman, a/k/a "Fox," and LISA HENDERSON, the defendant, using a call number ending in 1146 (the "1146 Number"). For the following reasons, amongst others, I believe HENDERSON used the 1146 Number for the duration of the 1208 Wires. First, the voicemail for the 1146 Number says "this is Lisa Henderson." Second, on or about May 17, 2017, law enforcement officers conducting surveillance in the vicinity of 64 Locust Hill Ave., Yonkers, New York, observed HENDERSON meet up with Coleman minutes after the woman using the 1146 Number arranged to meet up with Coleman.

8. Based on controlled buys conducted in January 2017, as well as conversations with law enforcement agents and my review and analysis of communications intercepted over the 1208 Wires, I believe that Jonathan Acquino, a/k/a "Jonathan Aquino," a/k/a "Jonathan Harvey-Acquino," a/k/a "Gotti," and Christopher Coleman, a/k/a "Fox," jointly distribute heroin in and around Westchester County, New York, and that Coleman is Acquino's source of heroin. On June 29, 2017, a grand jury in the Southern District of New York indicted Acquino and Coleman, amongst others, with conspiring to distribute, and to possess with the intent to distribute, heroin from in or about February 2017 through at least on or about June 29, 2017, in violation of Title 21, United States Code, Section 846 (the "Indictment"). Arrest warrants were issued in connection with the Indictment. Coleman, Acquino, and the other indicted co-conspirators are still at large.

9. Communications intercepted over the 1208 Wires, together with visual surveillance and other investigative techniques, have revealed the following about LISA HENDERSON, the defendant:[1]

    a. HENDERSON resides with Christopher Coleman, a/k/a "Fox," at 64 Locust Hill Ave., Apt. 3B, Yonkers, New York (the "Apartment"). Public utility records list HENDERSON as the resident of the Apartment. Law enforcement conducting surveillance have observed both Coleman and HENDERSON entering and exiting 64 Locust Hill Ave., Yonkers, New York. Furthermore, in communications intercepted pursuant to the 1208 Wires, Coleman and HENDERSON have at various times indicated that they are "home," or are coming "home," or will meet one

---

[1] Where I refer to the contents of previously recorded communications, my quotations and descriptions are based on preliminary draft summaries and transcriptions, my review of the recordings, and/or my discussions with other individuals.

3

another at "home," or are "in the house," indicating that they share a residence. Finally, in communications intercepted pursuant to the 1208 Wires, Coleman has ordered cabs and food deliveries to 64 Locust Hill Ave., Yonkers, New York.

    b. On or about May 13, 2017, HENDERSON provided Christopher Coleman, a/k/a "Fox," with packaged heroin that Coleman needed for resale. At approximately 11:27 a.m., Coleman placed a phone call to a call number ending in 7931 (Session 1865). During that call, the following conversation, in substance and in part, took place between Coleman and the user of the call number ending in 7931 ("UM342"):

| | |
|---|---|
| COLEMAN: | Hey Yo |
| UM342: | How quick could you come see me |
| COLEMAN: | You probably be calling me Man I don't wanna come over there....Listen you got any cars over there for sale |
| UM342: | Nothing good at the moment nothing real good |
| COLEMAN: | Alright. Let me get myself together and I'm try and take care of this as soon as possible |
| UM342: | How long you talking cause I got someone waiting |
| COLEMAN: | Give me like 20 mins |
| UM342: | Alright |
| COLEMAN: | Alright |

A few minutes later, at approximately 11:31 a.m., Coleman placed a phone call to HENDERSON on the 1146 Number (Session 1868). The call, in substance and in part, went as follows:

. . .

| | |
|---|---|
| COLEMAN: | What you doing right now? You busy? |
| HENDERSON: | No |
| COLEMAN: | Do me a favor bring me um five of my joints down |
| HENDERSON: | Okay where you gonna be? |
| COLEMAN: | I'm coming in front of the building now |
| HENDERSON: | In the car? |
| COLEMAN: | Nah I'ma walk over there |
| HENDERSON: | Alright |

A few minutes later, at approximately 11:35 a.m., Coleman placed a call to UM342 on a call number ending in 7931 (Session 1871). The call, in substance and in part, went as follows:

| | |
|---|---|
| UM342: | Yeah |
| COLEMAN: | Yo you know the park up there by my building where my father stay |
| UM342: | Yeah |

4

| | |
|---|---|
| COLEMAN: | Yeah come to the park |
| UM342: | The one before the building |
| COLEMAN: | Yeah |
| UM342: | Ok |

Shortly thereafter, at approximately 11:55 a.m., Coleman received a call from UM342 on a call number ending in 7931 (Session 1885). The call, in substance and in part, went as follows:

| | |
|---|---|
| COLEMAN: | Yo |
| UM342: | Where you at? |
| COLEMAN: | Where you at? |
| UM342: | Right here down by the park |
| COLEMAN: | You see my car right there right |
| UM342: | Yeah the white car it's been sitting here for a while |
| COLEMAN: | Yeah I've been waiting It's in the same spot. Put the money in the middle console. |
| UM342: | OK |
| COLEMAN: | What you going to put in there? What you going to put in there? 280 right? |
| UM342: | Yeah |
| COLEMAN: | So now we at 225 |
| UM342: | How many is that? How many is that for 225? |
| COLEMAN: | It's 5 of them |
| UM342: | At least give me 10 man, I can work with 10 keep running back |
| COLEMAN: | You told me [voices overlap] |
| UM342: | I said just for the little one let me get the bill straightened out |
| COLEMAN: | Ok 10 is no problem |
| UM342: | Bring me some more down |
| COLEMAN: | I'll see you in another hour |
| UM342: | Ok |

Based on my experience, training, and investigation of this matter, I believe that in Sessions 1871 and 1885, COLEMAN and UM342 arranged to meet so that Coleman could sell UM342 five bundles of heroin. I believe they discussed five bundles of heroin based on the price that Coleman quoted. I believe these were the five bundles of heroin that Coleman asked HENDERSON to bring down to him from the Apartment in Session 1868 ("Do me a favor bring me um five of my joints down"). I also believe that in Session 1885, UM342 requested that Coleman provide him with ten bundles instead of five so that UM342 did not have to keep

5

resupplying ("At least give me 10 man I can work with 10 keep running back") and that Coleman agreed ("Ok 10 is no problem").

Shortly thereafter, at approximately 12:20 p.m., Coleman placed a call to HENDERSON on the 1146 Number (Session 1890). The call, in substance and in part, went as follows:

. . .

| | |
|---|---|
| COLEMAN: | Oh. I need you to do one more thing for me |
| HENDERSON: | What |
| COLEMAN: | Your thing right. You know how your thing you know where your thing is at |
| HENDERSON: | Yeah |
| COLEMAN: | Right in there get one of the big ones out of there and do the same thing that you did this morning. Same five |
| HENDERSON: | For the other thing |
| COLEMAN: | Yeah my thing five and your thing, the big one that's in there |
| HENDERSON: | Alright |
| COLEMAN: | It's inside there in the same little pie. I'll be outside |
| HENDERSON: | Alright |

Based on my experience, training, and investigation of this matter, I believe that in this call Coleman was asking HENDERSON to bag five additional bundles of heroin. The conversation indicates that HENDERSON had bagged the five bundles of heroin that Coleman had sold to UM342 earlier in the day ("Right in there get one of the big ones out of there and do the same thing that you did this morning. Same five") and that the heroin needed to make the additional bundles was in the Apartment ("It's inside there in the same little pie. I'll be outside").

   c.  On or about May 17, 2017, at approximately 9:18 p.m., Coleman placed a phone call to HENDERSON on the 1146 Number (Session 3146). The call, in substance and in part, went as follows:

| | |
|---|---|
| HENDERSON: | I'm in the house baby |
| COLEMAN: | How you got in? |
| HENDERSON: | Mr. Charles text the other man, the other guy to unlock the door. |
| COLEMAN: | Oh ok well listen give me two of my joints ready, I'll be there in like fifteen minutes. |
| HENDERSON: | Give you two what. |
| COLEMAN: | Two not three two two of um. |

6

```
HENDERSON:          Alright.
COLEMAN:            I'll be there in like fifteen minutes.
HENDERSON:          Alright.
COLEMAN:            Alright.
```

At approximately 9:22 p.m., Coleman placed a phone call to HENDERSON on the 1146 Number. The call, in substance and in part, went as follows:

```
HENDERSON:          Hello
COLEMAN:            Yeah I'll be there in like five minutes so you
                    could come downstairs.
HENDERSON:          Alright.
COLEMAN:            By.
```

Shortly thereafter, law enforcement conducting surveillance observed Coleman pulling up in a car opposite 64 Locust Hill Ave., Yonkers, New York. They then observed a woman who appeared to be HENDERSON exit 64 Locust Hill Ave., enter the car, and then exit the car seconds later. Based on my training, experience, and involvement in this investigation, I believe that Coleman had asked HENDERSON to bring him two bundles of heroin ("two of my joints") down from the Apartment, which HENDERSON did.

WHEREFORE, the deponent respectfully requests that LISA HENDERSON, the defendant, be arrested and imprisoned or bailed, as the case may be.

_____
SEAN P. FOGARTY
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
5th day of July 2017

_____
THE HONORABLE LISA M. SMITH
United States Magistrate Judge
Southern District of New York